# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1912

_____

United States of America

*Plaintiff - Appellee*

v.

Kayne Russell Donath

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: January 11, 2024
Filed: July 12, 2024

_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

_____

SMITH, Chief Judge.

Kayne Russell Donath pleaded guilty to unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, he challenges the district

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024.  *See* 28 U.S.C. § 45(a)(3)(A).

Case 2:22-cr-01028-CJW-MAR   Document 67   Filed 07/12/24   Page 1 of 13
Appellate Case: 23-1912   Page: 1   Date Filed: 07/12/2024 Entry ID: 5412755

court's[2] categorization of two previous state offenses as "crime[s] of violence" under U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(a). He also challenges the district court's decision to decrease his offense by two levels, rather than three, for acceptance of responsibility under U.S.S.G. § 3E1.1. On both issues, we affirm.

## I. *Background*

On June 2, 2022, Donath rode as the front-seat passenger in a vehicle driven by Jade Danyell Harris, a Facebook friend who had offered Donath a car ride. Police officers initiated a traffic stop. They identified the driver as Harris and the passenger as Donath. Officers conducted a routine warrant check. Harris was clear, but Donath had an outstanding warrant. Officers asked Donath to exit the vehicle. He refused to comply. Instead, he grabbed the gearshift, shifted the vehicle into drive, and commanded Harris to drive away. Harris did so, and officers pursued them.

When officers caught the vehicle, only Harris remained inside. She told officers that Donath had pulled a firearm during the traffic stop, held it to her side, and threatened to shoot her if she did not drive away. She said the firearm had not been visible to officers because Donath had concealed it under a durag. After Harris and Donath fled, Donath threw the firearm into an alleyway and ran.

Officers searched the alleyway and found a Taurus G2C 9mm pistol with one chambered round and a 12-round magazine. A black cloth, consistent with Harris's description of Donath's durag, was tied around the trigger guard. Officers searched the surrounding area for Donath. When they saw a residence with an open door, they went to the doorway and asked an apparent resident for permission to enter and search for a runaway suspect. The resident consented. Officers entered, detected Donath upstairs, ordered him to come downstairs, and arrested him.

At the time of his arrest, Donath had a prior felony conviction and was therefore prohibited from possessing a firearm. Based on his possession of the pistol,

---

[2]The Honorable C.J. Williams, then United States District Judge for the Northern District of Iowa, now Chief Judge.

the government charged Donath with being a felon in possession. Donath pleaded guilty to the offense. However, he challenged the government on two sentencing matters. First, he disputed whether two of his prior offenses under Iowa law constituted "crime[s] of violence." *See* U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(a). Second, he denied pointing his firearm at Harris. *See id.* § 2K2.1(b)(6)(B).

As to the crimes of violence, the Sentencing Guidelines assigned a base offense level of 20 if Donath "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." *Id.* § 2K2.1(a)(4)(A). A "crime of violence" includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a). Donath conceded his two prior convictions for assaulting correctional officers in violation of Iowa Code § 708.3A(3).[3] However, he argued that assaulting a correctional officer is not a crime of violence because it does not require proof that the offender used, attempted to use, or threatened to use physical force against the victim. The district court rejected this argument as speculative.

Donath also argued that he never pointed his firearm at Harris. If Donath had pointed his firearm at Harris, he would receive a four-level increase. *See* U.S.S.G. § 2K2.1(b)(6)(B) (directing a four-level increase if the defendant used his firearm "in connection with another felony offense"); Iowa Code §§ 708.1(2)(c); 708.2(3)

---

[3]Although Iowa law gives the designation "aggravated misdemeanor" to the state offense of assaulting a correctional officer, a federal court treats the offense as a felony when it calculates the defendant's recommended sentence. *See* Iowa Code §§ 708.3A(3), 903.1(2) (imposing a maximum prison term of two years); U.S.S.G. § 2K2.1 n.1 (describing felonies as offenses "punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed").

(assault with a dangerous weapon).[4] By a preponderance of the evidence, the government proved that Donath pointed his firearm at Harris. Accordingly, the court increased Donath's offense level from 20 to 24.

Next, the court heard the parties' arguments about whether Donath accepted responsibility. A two-level decrease applies if a "defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). And if "the defendant has assisted authorities in the[ir] investigation or prosecution of his own misconduct," the government may move for an additional one-level decrease, and the court may grant it. *Id.* § 3E1.1(b). Here, the government said that it was "not moving for the additional third level and would argue that the defendant should not receive any acceptance of responsibility" because, despite his guilty plea, he contested "the operative facts" of the case. R. Doc. 61-1, at 112–13. Donath argued that, after pleading guilty, he made only non-frivolous and good-faith objections, which did not relate to his offense but only to sentencing matters. He asserted that promptly pleading guilty should entitle him to the additional level.

The court ruled: "In my view, this is a close call, but I am not going to deny the 2-level reduction for acceptance of responsibility." *Id.* at 115. "Were the Court to routinely deny a 2-level reduction for acceptance of responsibility every time a defendant . . . put the government to the test of proving up an enhancement, that would effectively deter defendants from ever challenging the government . . . ." *Id.* But, the court continued: "[T]he government is the only person with the authority— or the only authority able to move for the third level off under [§] 3E1.1(b). It has not done so here." *Id.* at 116. Finding that Donath accepted responsibility sufficient for a two-level decrease but noting the absence of a government motion for a three-level decrease, the court calculated a total offense level of 22.

---

[4]As with the preceding footnote, Iowa law treats assault with a dangerous weapon as an aggravated misdemeanor, but a federal court treats it as a felony during sentencing. *See* Iowa Code §§ 708.2(3), 903.1(2); U.S.S.G. § 2K2.1 n.1.

Given a total offense level of 22 and a criminal history category of VI, the Guidelines advised a sentencing range of 84 to 105 months' imprisonment. The government asked the court for 90 months. Donath asked for "a sentence at the low end of the range." *Id.* at 128. The court sentenced Donath to 90 months' imprisonment.

## II. *Discussion*

On appeal, Donath raises two issues. First, he argues that his prior assaults of correctional officers, in violation of Iowa Code § 708.3A(3), are not "crime[s] of violence" under U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(a). Second, he argues that the district court erred when it adjusted his offense level downward by two levels, instead of three, for acceptance of responsibility under U.S.S.G. § 3E1.1. Both issues are questions of law, which require us to interpret the Guidelines. "[T]he most appropriate standard for reviewing a district court's interpretation and application of the [G]uidelines is the de novo standard." *United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005); *see also United States v. Pulley*, 75 F.4th 929, 930 (8th Cir. 2023) (crimes of violence); *United States v. Wattree*, 431 F.3d 618, 623 (8th Cir. 2005) (acceptance of responsibility), *abrogated on other grounds by United States v. Jordan*, 877 F.3d 391, 394–95 (8th Cir. 2017).

## A. *Crimes of Violence*

The first issue is whether Donath committed crimes of violence, within the meaning of the Guidelines, when he assaulted two correctional officers in violation of Iowa Code § 708.3A(3). The base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). A "crime of violence" includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1).

Under Iowa law, § 708.3A(3) assault carries a maximum sentence of two years' imprisonment. Iowa Code § 903.1(2). Thus, for federal sentencing purposes, we treat it as a felony. U.S.S.G. § 2K2.1 n.1. On appeal, we must decide whether

Case 2:22-cr-01028-CJW-MAR   Document 67   Filed 07/12/24   Page 5 of 13
Appellate Case: 23-1912   Page: 5   Date Filed: 07/12/2024 Entry ID: 5412755

Donath's convictions for § 708.3A(3) assault are crimes of violence because they "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

Precedent controls this issue. In *United States v. Hamilton*, we held that § 708.3A(3) assault is a crime of violence. 46 F.4th 864, 870 (8th Cir. 2022). Applying the categorical approach, we said that "'[p]hysical force' is 'force capable of causing physical pain or injury to another person.'" *Id.* at 869 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). "If only conduct involving physical force can support a conviction under the statute, then the crime has a physical-force element." *Id.* (quoting *United States v. Quigley*, 943 F.3d 390, 394 (8th Cir. 2019)). A speculative reading of a criminal statute will not suffice. *Id.* To establish that a defendant's prior offense is not a crime of violence:

> [T]here must be a non-fanciful, non-theoretical manner to commit the offense without so much as the threatened use of physical force. To make this showing, a defendant must at least point to his own case or other cases in which the state courts did in fact apply the statute in the special (nongeneric) manner for which he argues.

*Id.* (cleaned up).

Defendant Hamilton could not show a non-fanciful, non-theoretical manner of assaulting a government officer—in his case, a police officer—without even the threatened use of physical force. *Id.* at 868–70. He could "not identify any Iowa cases or his own case where section 708.3A(3) was applied in a way that did not involve at least the threatened use of physical force." *Id.* at 870. Accordingly, we held that § 708.3A(3) assault "qualifies as a crime of violence." *Id.*

Here, Donath argues that he has identified Iowa precedent that Hamilton did not identify. Donath points to an unpublished 2017 decision of the Iowa Court of Appeals. *State v. Hauck*, 908 N.W.2d 880 (Iowa Ct. App. 2017) (unpublished table decision). According to Donath, *Hauck* shows that it is possible to assault a person,

in violation of Iowa law, without so much as the threatened use of physical force. Given *Hauck*, Donath asks us to revisit *Hamilton*.

We will not examine *Hauck* or revisit *Hamilton*. "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (quoting *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam)). A prior panel has held that § 708.3A(3) assault is a crime of violence. *Hamilton*, 46 F.4th at 870. Donath committed § 708.3A(3) assault. Therefore, he committed a crime of violence.

On questions of federal law, we have said that our cardinal rule is not absolute. "A limited exception to the prior panel rule permits us to revisit an opinion of a prior panel if an intervening Supreme Court decision is inconsistent with the prior opinion." *McCullough v. AEGON USA, Inc.*, 585 F.3d 1082, 1085 (8th Cir. 2009). The same is true when an intervening decision of the en banc court is inconsistent with a prior panel opinion. *See Cottier v. City of Martin*, 604 F.3d 553, 556 (8th Cir. 2010) (en banc) ("When sitting en banc, the court has authority to overrule a prior panel opinion, whether in the same case or in a different case.").

On questions related to state law, a similar exception may exist when there is an intervening decision from a state court. We are aware of such an exception in some other circuits. *See, e.g.*, *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009); *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009); *FDIC v. Abraham*, 137 F.3d 264, 268–69 (5th Cir. 1998). And this exception may already exist in our circuit.[5] However, the parties have not briefed

---

[5]*Compare Beckon, Inc. v. AMCO Ins. Co.*, 616 F.3d 812, 820 (8th Cir. 2010) ("When the highest court of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court, the latter ruling must give way." (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 429 n.12 (1st Cir. 1996)), *with Arena Holdings Charitable, LLC v. Harman Pro., Inc.*, 785 F.3d 292, 296 (8th Cir. 2015) ("[O]ur circuit has never specifically determined the binding effect of a state law determination by a prior panel . . . ." (quoting *AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 767 (8th Cir. 2006))). We do not regard

-7-

the issue. *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) ("[P]oints not meaningfully argued in an opening brief are waived."). Even if they had, Donath does not point to an intervening state case. He points to *Hauck*, and the state court's decision in *Hauck* predates our decision in *Hamilton*, so it is unavailing.

Regardless of what effect an intervening state case may have, we hold that an old state case—a state case decided before a prior panel opinion—cannot overcome our circuit's prior panel rule. *Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 958 (8th Cir. 2014); *Neidenbach v. Amica Mut. Ins. Co.*, 842 F.3d 560, 566 n.2 (8th Cir. 2016). If a conflict existed, we would afford a more recent panel opinion controlling weight over a less recent state case. Following *Hamilton* and disregarding *Hauck*, we conclude that Donath committed crimes of violence when he assaulted two correctional officers in violation of § 708.3A(3).

Alternatively, Donath argues that we should revisit *Hamilton* in light of *United States v. Taylor*, 596 U.S. 845 (2022). The problem here is almost identical. The Supreme Court decided *Taylor* on June 21, 2022, and the circuit panel decided *Hamilton* on August 30, 2022. *Taylor* does not intervene between *Hamilton* and the present case. An older Supreme Court decision does not overcome the binding nature of a newer opinion filed by a three-judge panel of our court. *See McCullough*, 585 F.3d at 1085. Accordingly, we decline to examine *Taylor* as well.

---

as binding the comment that our court previously made in an unpublished opinion. *See United States v. Holston*, 773 F. App'x 336, 337 (8th Cir. 2019) (unpublished per curiam) ("[W]here a state court answers a question of state law contrary to a previous decision of our Court, we no longer follow the previous panel decision."); 8th Cir. R. 32.1A ("Unpublished opinions are decisions a court designates for unpublished status. They are not precedent.").

## B. *Acceptance of Responsibility*

The second issue Donath raises is whether his guilty plea warranted a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1.[6] Subsection (a) of this Guideline provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." *Id.* § 3E1.1(a). When Donath's sentence was imposed, subsection (b) provided:

> If the defendant qualifies for a decrease under subsection (a) . . . and *upon motion of the government* stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

*Id.* § 3E1.1(b) (as of Apr. 17, 2023) (emphasis added).

After Donath's sentence was imposed, the Sentencing Commission amended subsection (b) by adding the following language:

> The term "preparing for trial" means substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial. "Preparing for trial" is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists. Preparations for pretrial proceedings (such as litigation related to a charging document,

---

[6]The government argues that Donath did not preserve his claim of error because he did not object when the district court granted a two-level decrease for acceptance of responsibility. We disagree. At sentencing, Donath clearly made his desire for an additional level known to the court. *See* Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, *or* the party's objection to the court's action and the grounds for that objection." (emphasis added)); *see also United States v. Wallace*, 377 F.3d 825, 826 (8th Cir. 2004) (holding that a claim of error was preserved under similar circumstances).

discovery motions, and suppression motions) ordinarily are not considered "preparing for trial" under this subsection. Post-conviction matters (such as sentencing objections, appeal waivers, and related issues) are not considered "preparing for trial."

*Id.* (effective Nov. 1, 2023).

Whether we apply the Guideline as it existed at sentencing or as subsequently amended depends on the character of the amendment. Subsection 1B1.11(a) states: "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." *Id.* § 1B1.11(a). However, § 1B1.11(b)(2) states: "[T]he court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." *See United States v. King*, 280 F.3d 886, 891 (8th Cir. 2002) ("A defendant sentenced under one version of the Guidelines may be given the benefit of a later revision if the revision merely clarifies, rather than substantively changes, the Sentencing Commission's earlier intent."). We have held that an amendment effects a clarifying change, rather than a substantive change, "if it does not conflict with the preexisting [G]uideline," even if it "changes the law of this circuit." *United States v. Hansen*, 859 F.3d 576, 578 (8th Cir. 2017). We will find no conflict, treat an amendment as clarifying rather than substantive, and apply it retrospectively to the defendant, unless the amendatory language is "plainly at odds," *United States v. Diaz-Diaz*, 135 F.3d 572, 581 (8th Cir. 1998), or "fundamentally inconsistent" with the preexisting Guideline, *United States v. Lambros*, 65 F.3d 698, 700 (8th Cir. 1995).

Comparing the old and new versions of the Guideline, we see no conflict. The new language simply defines the term "preparing for trial," and it is not "plainly at odds" or "fundamentally inconsistent" with the Guideline's earlier version, which did not define this term. *See* U.S.S.G. § 3E1.1(b); *Diaz-Diaz*, 135 F.3d at 581; *Lambros*, 65 F.3d at 700. Thus, we review Donath's sentence under the current Guideline, inclusive of the new "preparing for trial" definition.

Our circuit reads "black-letter Guidelines" together with their comments and application notes. *United States v. Rivera*, 76 F.4th 1085, 1089–91 (8th Cir. 2023),

*cert. denied*, 144 S. Ct. 861 (2024). A lawfully adopted, noncontradictory comment or application note that interprets or explains a Guideline will be given controlling weight unless plainly erroneous. *United States v. Mendoza-Figueroa*, 65 F.3d 691, 693 (8th Cir. 1995) (en banc); *see Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."); *Rivera*, 76 F.4th at 1089–91 (reaffirming our adherence to *Mendoza-Figueroa* and *Stinson*, notwithstanding "significant developments" in recent case law).

Here, the acceptance-of-responsibility Guideline on which Donath relies has an application note. Application Note 6 says:

> Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) *may only* be granted upon a formal motion by the Government at the time of sentencing. *See* section 401(g)(2)(B) of Pub. L. 108-21.

U.S.S.G. § 3E1.1 n.6 (emphasis added). This note was enacted by Congress, it interprets or explains the Guideline, and it is not a plainly erroneous reading of the Guideline. *See Rivera*, 76 F.4th at 1090 (discussing the note's enactment).

We give controlling weight to the words "may only." Thus, the acceptance-of-responsibility Guideline permits, but never requires, the government to move for an additional one-level reduction. "A defendant . . . is not entitled to an additional level of reduction as a matter of right." *United States v. Smith*, 422 F.3d 715, 726 (8th Cir. 2005). Because a three-level decrease "may only be granted upon a formal motion by the Government," U.S.S.G. § 3E1.1 n.6, and the government did not formally move here, Donath is not entitled to the additional third level.

A court may compel a government motion for a three-level decrease, contrary to the plain language of Application Note 6, only if the government's decision not to move is based on an unconstitutional motive or irrational. *Jordan*, 877 F.3d at

-11-

394. Donath "has presented no evidence that the [government's] decision was based on an unconstitutional motive, such as his race or his religion." *United States v. Smith*, 574 F.3d 521, 525 (8th Cir. 2009) (affirming the denial of a downward departure for substantial assistance). And the government had a rational basis for withholding its motion. Specifically, Donath showed a lack of candor and remorse on a factual issue that was central to the determination of his sentencing range. He denied that he threatened and pointed his firearm at Harris. A defendant "may not minimize conduct or partially accept responsibility" and still expect to receive a three-level decrease. *United States v. Zeaiter*, 891 F.3d 1114, 1123 (8th Cir. 2018) (quoting *United States v. Fischer*, 551 F.3d 751, 755 (8th Cir. 2008)). "[T]he district court's generous award of a two-level reduction did not compel the government to move for a third." *United States v. Gaye*, 902 F.3d 780, 789 (8th Cir. 2018).

The Commission's recent amendment to the acceptance-of-responsibility Guideline does not change our view. Again, the amendment simply clarifies what "preparing for trial" means. This amendment narrows the government's discretion to move *for* a three-level decrease,[7] but it does not affect the government's decision *against* a motion. Under Application Note 6, the government has broad discretion to withhold its motion. A court may compel the government to move for a three-level decrease only under the rarest circumstances, not present here.[8]

### III. *Conclusion*

Following *Hamilton*, we hold that Donath committed crimes of violence when he assaulted two correctional officers in violation of Iowa Code § 708.3A(3). *See*

---

[7]Before the recent amendment, a prosecutor potentially could have moved for a three-level decrease based on a defendant's assistance with pretrial proceedings or on post-conviction matters. By the amendment, the Commission has now clarified that such a motion would be improper and should be denied. Thus, the amendment narrows the availability of three-level decreases to defendants.

[8]In other words, the black-letter Guideline controls when the government *may move for* a three-level decrease. Application Note 6 controls when the government *may decline to move*. The recent amendment does not alter Application Note 6.

*Hamilton*, 46 F.4th at 870. Following Application Note 6, we hold that Donath was not entitled to a three-level decrease for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 n.6. On both issues, the district court is affirmed.

_____

Case 2:22-cr-01028-CJW-MAR    Document 67    Filed 07/12/24    Page 13 of 13
Appellate Case: 23-1912    Page: 13    Date Filed: 07/12/2024 Entry ID: 5412755